UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**EJRO and RJRO,**

        **Petitioners,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　**Case No. SA-20-CV-1157-JKP**

**JO ANN MCLANE, et al.,**

        **Respondents.**

## MEMORANDUM OPINION AND ORDER

The Court has under consideration *Petitioners' Motion to Alter or Amend Judgment* (ECF No. 11). On October 1, 2020, the Court conducted a hearing on Petitioners' *Motion for an Ex Parte Temporary Restraining Order* (ECF No. 2) and orally denied the motion for lack of jurisdiction. The next day, it memorialized the ruling in a Memorandum Opinion and Order (ECF No. 9) and entered a Final Judgment (ECF No. 10) dismissing this case on jurisdictional grounds. Petitioners timely filed the instant motion pursuant to Fed. R. Civ. P. 59(e). With the filing of the response (ECF No. 12) and reply (ECF No. 14), the motion is ripe for ruling. For the reasons that follow, the Court denies the motion.

Through Fed. R. Civ. P. 59(e), litigants may move "to alter or amend a judgment," so long as they do so within twenty-eight days of the entry of judgment. *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020). Rule 59(e) provides courts with an opportunity to remedy their "own mistakes in the period immediately following" their decisions. *See id*. (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)). Given "that corrective function," courts generally use the rule "only to reconsider matters properly encompassed in a decision on the merits." *Id*. (internal quotation marks and brackets omitted). While "courts may consider new arguments based on an 'intervening change in controlling law' and 'newly discovered or previously unavailable evidence,'" they "will

not address new arguments or evidence that the moving party could have raised before the decision issued." *Id*. at 450 & n. 2.

A Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *T. B. ex rel. Bell v. Nw. Indep. Sch. Dist.*, ___ F.3d. ____, ___, No. 19-11115, 2020 WL 6867184, at *2 (5th Cir. Nov. 23, 2020) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003). Such a motion is for that "narrow purpose" only and courts "sparingly" use the "extraordinary remedy" to reconsider "a judgment after its entry." *Def. Distributed v. U.S. Dep't of State*, 947 F.3d 870, 873 (5th Cir. 2020) (citations omitted). Courts, nevertheless, "have 'considerable discretion in deciding whether to reopen a case under Rule 59(e).'" *Id*. (quoting *Edward H. Bohlin Co. v. The Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993)).

In a matter of four days, Petitioners had commenced this action and moved for an ex parte temporary restraining order ("TRO"); Respondents had entered their appearance and asked to be heard in opposition to the TRO; and the Court conducted a hearing on the motion, orally denied it for lack of jurisdiction, and issued a written order memorializing its ruling. The Order Setting Motion Hearing (ECF No. 6) instructed the parties to be prepared to discuss the issues raised by the motion and briefing. Despite a statement in their reply to the contrary, *see* Reply at 3, Petitioners had notice that Respondents had entered an appearance in the case and would appear and argue at the hearing. But Respondents had not filed a written response to the motion for temporary restraining order.

In response to the Rule 59(e) motion, Respondents argue that Petitioners could have raised their jurisdictional arguments prior to the entry of judgment.[1] The Court, however, recognizes that

---

[1] Respondents also affirmatively state in their response to the Rule 59(e) motion that Petitioners were removed to Honduras "several weeks" before the motion. Resp. at 7. Although Petitioners make no attempt to contest that removal

Respondents first raised the jurisdictional issues at the hearing on the motion for TRO. Although Petitioners knew or should have known that Respondents would argue in opposition to the requested TRO, Respondents had made no filing indicating the jurisdictional issues they would raise. And, while Petitioners had an opportunity to reply to the arguments at the hearing, such opportunity did not include time to research the issues and present a full reply before the Court issued its oral ruling.

Even with the limited nature of a Rule 59(e) motion, the circumstances warrant addressing Petitioners' arguments on the merits rather than simply finding that they could have been asserted prior to entry of judgment. Even though it is unquestionable that federal courts have the obligation to consider the basis for their own jurisdiction whenever presented (or even sua sponte if necessary), *see Edwards v. 4JLJ, LLC*, 976 F.3d 463, 465 n.2 (5th Cir. 2020), they also have the corollary duty "to exercise the jurisdiction given them," *Mega Vape, LLC v. City of San Antonio*, 455 F. Supp. 3d 299, 308 (W.D. Tex. 2020) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *accord Mata v. Lynch*, 576 U.S. 143, 150 (2015) ("And when a federal court has jurisdiction, it also has a 'virtually unflagging obligation . . . to exercise' that authority."). If the Court were to conclude that Petitioners' arguments lead to a finding that it erred in dismissing this case on jurisdictional grounds, such error is the sort of manifest error of law that properly leads to an amended or altered judgment through Rule 59(e).

Of course, because courts presume that they "lack jurisdiction unless the contrary appears affirmatively from the record, the party asserting federal jurisdiction when it is challenged has the burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, n.3 (2006) (citation

---

in reply, Respondents have filed an advisory in which they correct their statement. *See* ECF No. 15. Petitioners have not been removed to Honduras. Thus, the Court has no occasion to consider whether mootness would render this Court without jurisdiction in this case.

and internal quotation marks omitted). Although the Court has already found a lack of jurisdiction based on the facts and arguments presented at the hearing, such finding does not mean that Petitioners may not present additional jurisdictional argument through their Rule 59(e) motion given the facts of this case. The circumstances here present a situation when the parties opposing jurisdiction raised their arguments at a hearing, the Court issued its jurisdictional finding at the hearing, and memorialized it with a written order the next day. In these circumstances, the Court will not foreclose the Rule 59(e) arguments under the guise that Petitioners could have raised them prior to entry of judgment. It will consider the jurisdictional arguments raised in Petitioners' timely motion.

Petitioners do not present new evidence on the jurisdictional issues. They instead rely entirely on asserted manifest error to alter or amend the judgment. To succeed on that basis, they must clearly establish either a manifest error of law or fact. They argue that the Court's judgment is based on the erroneous legal conclusion that they are challenging their removal orders. Mot. at 2-3. They also dispute that they are challenging the execution of an unexecuted final order of removal. *Id*. at 3. Relying on 8 U.S.C. § 1101(g), they contend that, by operation of law, they were removed when immigration officials returned them to Mexico under the Migrant Protection Protocols ("MPP") after they received their removal orders. *Id*. at 3-4. They thus argue that they are not challenging any unexecuted removal order; instead Respondents are, in effect, seeking to reinstate their removal orders, which for unaccompanied minors is prohibited under 8 U.S.C. § 1232(a)(5)(D)(i). *Id*. They argue that federal district courts have jurisdiction to review reinstatement of removal orders because "a reinstatement order is not literally an 'order of removal.'" *Id*. (quoting *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002)). Finally, they argue that, because their removal orders were executed by virtue of § 1101(g), 8 U.S.C. § 1252 does not strip

4

this Court of jurisdiction over this action. *Id*.

First, Petitioners are incorrect that the judgment in this case is based on the erroneous legal conclusion that they are challenging their removal orders. The Court indeed addressed jurisdiction under that scenario. But it did so to cover both scenarios addressed in *A.M.P.V. ex rel. Aguayo v. Barr*, No. 20-CV-913 (RDM), 2020 WL 2079433 (D.D.C. Apr. 30, 2020) – a case the Court found to be both persuasive and indistinguishable. Importantly, the Court also addressed jurisdiction to the extent Petitioners did not challenge their removal orders. To the latter extent, it found that under the rationale of *Aguayo*, "Petitioners effectively challenge the execution of the existing, unexecuted final order of removal and that § 1252(g) strips this Court of jurisdiction to hear such challenge." The express statement that Petitioners are not challenging their removal orders simply means that the primary focus of this Rule 59(e) motion will be on this alternate basis for finding a lack of jurisdiction. But, as will be seen later, the focus will ultimately turn on whether Petitioners are challenging a removal order despite their protestations to the contrary.

The centerpiece for Petitioners' Rule 59(e) motion lies with 8 U.S.C. § 1101(g). Until raising the issue in their motion, no one in this case had addressed the ramifications of that provision on this case. At the hearing, Respondents essentially relied on arguments and analysis set out in *Aguayo*. That case, however, did not consider § 1101(g). And in finding that case persuasive and in following it, this Court similarly did not consider § 1101(g). But the critical question is whether that provision creates manifest error in this Court's jurisdictional ruling. The Court thus considers how § 1101(g) might affect the jurisdictional issues.

The Fifth Circuit has interpreted § 1101(g) once. *See United States v. Ramirez-Carcamo*, 559 F.3d 384, 388-90 (5th Cir. 2009). As recognized in that case, § 1101(g) has remained essentially unchanged since its adoption in 1952. *Id.* at 388-89. But, as part of "'massive' 1996 reforms,"

Congress made "a suggestive change" to the subsection, to add "or removed," following "deported." *Id.* at 389. The provision currently reads in full:

> For the purposes of this chapter any alien ordered deported or removed (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed.

8 U.S.C. § 1101(g). And the chapter to which it refers is Chapter 12 (Immigration and Nationality) of Title 8 of the United States Code.

In *Ramirez-Carcamo*, the Fifth Circuit considered an appeal of a "conviction for illegal reentry after removal, in which the defendant argued "that the statutory elements for that offense were not met." 559 F.3d at 385. The defendant argued "that his exit prior to the entry of the . . . removal order constituted a voluntary departure," and thus "there was not a removal." *Id.* at 385-86. The Fifth Circuit held:

> No matter whether the removal order comes first and the alien then departs, or, as here, the departure comes first and then removal is ordered *in absentia*, the alien ultimately is outside the country with an enforceable order requiring that he have exited. When both have occurred, the person is "considered to have been . . . removed in pursuance of law."

559 F.3d at 389 (citation omitted). It thus concluded "that aliens do not avoid prosecution under [8 U.S.C. §] 1326 by refusing to comply with their obligation to appear at removal proceedings and instead departing in advance of the removal order." *Id.* at 390. When a removal order is "entered *in absentia*, it has the same effect for prosecutions under Section 1326 as would a departure after the removal order" *Id.*

*Ramirez-Carcamo* appears to support Petitioners' interpretation of § 1101(g). Similarly, the Supreme Court long ago found "no doubt" that an alien's departure from the United States executes an order of deportation. *Mrvica v. Esperdy*, 376 U.S. 560, 563 (1964). In doing so, the Supreme Court specifically relied on statutes applicable in 1942, but also expressly recognized

that, through § 1101(g), the statutory language "has been carried forward in the current provisions and made applicable to the Immigration and Nationality Act generally." *Id*. at 563 & n.4. Neither side addresses these cases even though they appear directly relevant to the § 1101(g) issue. And relying on *Mrvica*, one court has stated that "[i]t is well settled that when an alien departs the United States while under a final order of deportation, he or she executes that order pursuant to the law." *Mansour v. Gonzales*, 470 F.3d 1194, 1198 (6th Cir. 2006) (citing *Mrvica*, 376 U.S. at 563-64, among other cases).

Here, Petitioners were returned to Mexico under an order of removal that had not yet become final. The order became final while Petitioners remained outside the United States. However, the finality of the order does not appear material to the analysis under *Ramirez-Carcamo*. Nor does it appear important in *Mrvica*. Under these cases, when an alien departs the United States while under an order of removal, the Court properly finds that he or she has executed that order pursuant to law.

For various reasons, Respondents argue that Petitioners cannot reasonably argue that they were removed when they were returned to Mexico pending their removal proceedings in accordance with the MPP program. First, they submit that 8 C.F.R. § 1003.6(a) does not permit removal during the thirty-day period for filing an appeal. And, 8 C.F.R. § 1003.4 deems an appeal withdrawn if an alien departs from the United States. Furthermore, the statute applied to Petitioners, 8 U.S.C. § 1225(b)(2)(C), which became effective in 2009 and has not changed in the interim, does not appear to contemplate that a return to Mexico effectuates removal; it instead appears to contemplate a return to Mexico pending removal proceedings. Section 1225(b)(2)(C) states:

> In the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title.

In a footnote, Respondents also assert assorted reasons why "Petitioners' interpretation of § 1101(g) would have significant adverse and inconsistent consequences."

The circumstances of this case present no reason to address Respondents' various concerns. Neither the Fifth Circuit nor the Supreme Court has provided guidance by addressing the interaction of § 1225(b)(2)(C) with § 1101(g). Nevertheless, it is notable that Petitioners present a facially appealing argument that, under the facts of this case, § 1225(b)(2)(C) became inapplicable once they received their orders of removal and they were no longer waiting for any § 1229a proceeding. *See* Reply at 6. Furthermore, many, if not all of Respondents' concerns, could perhaps be avoided by not returning aliens to Mexico pending their appeal. But these are matters that the Court need not reach.

Instead, for purposes of the pending Rule 59(e) motion, the Court will proceed as though § 1101(g) is properly interpreted as stated in *Ramirez-Carcamo* and *Mrvica*. It does so while recognizing that, although § 1101(g) has undergone minimal changes since 1952 (or before as reflected in *Mrvica*), immigration law experienced massive changes in 1996 and has continued to change through statutory enactment and amendment as well as promulgation of applicable regulations.

There are many reasons to refrain from delving into Respondents' concerns and Petitioners' arguments to the contrary. In this instance, the most important one lies with the fact that, even under Petitioners' interpretation and application of § 1101(g), they have not carried their burden to show manifest error. Under their interpretation, Petitioners would not be challenging an unexecuted removal order and they argue that 8 U.S.C. § 1252 thus does not strip this Court of jurisdiction over this action. In making that argument, they rely on *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292 (5th Cir. 2002). But that case does not address the jurisdiction of the district courts; it addresses

whether an appropriate court of appeals has jurisdiction to review a reinstatement order through a petition for review under 8 U.S.C. § 1252(a) and (b). *See* 290 F.3d at 294-95.

As recognized in *Ojeda-Terrazas*, reinstatement orders arise under 8 U.S.C. § 1231(a)(5). *See id.* Under that statute:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). This provision has not changed in the intervening years. Although "a reinstatement order is not literally an 'order of removal' because it merely reinstates a previously issued order of removal or deportation," the prior "order is a final order" and § 1252 is fairly interpreted to grant the appellate courts "authority to review the lawfulness of the reinstatement order." 290 F.3d at 295. Such review by the appellate court is limited by § 1231(a)(5) "to the reinstatement order itself;" because the appellate court "cannot 'reopen or review' the merits of [the prior removal] order." *Id.*

Nothing in *Ojeda-Terrazas* supports finding that a district court, such as this one, has any jurisdiction to review a reinstatement order. The Fifth Circuit, furthermore, hammered this point home when it later specifically recognized that 8 U.S.C. § 1252(a)(5) makes a "petition for review of [an] order of reinstatement" the "sole and exclusive means for judicial review." *Iracheta v. Holder*, 730 F.3d 419, 422 (5th Cir. 2013). That there may be an apparent conflict between reinstating the prior order of removal and utilizing the statutory scheme set out for unaccompanied minors in 8 U.S.C. § 1232(a)(5)(D)(i) does not of itself provide jurisdiction when Congress appears to have withdrawn jurisdiction from the lower district courts. A review of the statutory scheme reveals that, when an appropriate appellate court has jurisdiction to review a matter through a

petition for review, the district courts lack jurisdiction to conduct such review. This Court set out that statutory scheme in the order leading to the judgment challenged presently by Petitioners and it bears repeating in full:

Pursuant to the REAL ID Act of 2005, "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means of judicial review of an order of removal entered or issued under any provision of [Chapter 12]." 8 U.S.C. § 1252(a)(5); *accord Rosales v. Bureau of Imm. & Customs Enf't*, 426 F.3d 733, 736 (5th Cir. 2005) (recognizing that the REAL ID Act amended the jurisdictional provisions of the Immigration and Nationality Act ("INA")). That Act also modified § 1252(b)(9), which now reads:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Similarly, that same Act includes the following "Exclusive jurisdiction" provision:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Proceeding as though Respondents were acting on an unexecuted removal order, the Court previously found it lacked jurisdiction to review the removal order under § 1252(g). Now that it proceeds as though Respondents were acting on an executed removal order (by virtue of § 1101(g)) that has been reinstated under 8 U.S.C. § 1231(a)(5), the Court agrees that § 1252(g) does not appear to preclude review. But that merely means that any review is limited to a petition for review

as set out in § 1252(a)(5). The statutory scheme does not grant this Court jurisdiction to exercise mandamus jurisdiction under 28 U.S.C. § 1361. Section 1252(b)(9) in conjunction with § 1252(a)(5) expressly removes mandamus jurisdiction and makes petitions for review of final orders the sole means to obtain review. *Ojeda-Terrazas* does not support finding a manifest error in the Court's jurisdictional ruling. Petitioners' argument ignores the difference between jurisdiction in district and appellate courts. It does not flow logically that, because the court of appeals has jurisdiction under *Ojeda-Terrazas*, that this Court does. The basis for the lack of jurisdiction here merely changes from § 1252(g) to § 1252(a)(5) in conjunction with § 1252(b)(9).

Given the above analysis, Petitioners have provided no basis to find that the Court committed any manifest error when it found it lacked jurisdiction over this action. If the Court were to accept their position that § 1101(g) makes the prior order of removal executed by operation of law, such position merely alters the statutory basis for finding a lack of jurisdiction in this district court. But regardless, this Court lacks jurisdiction over this action and Petitioners have asserted no legitimate basis to alter or modify this Court's judgment. Nor have they provided any legitimate basis for the Court to reconsider its reliance on *Aguayo* except as already set out herein by considering the ramifications of § 1101(g).

After arguing that *Ojeda-Terrazas* supports finding that this Court has jurisdiction over this case, Petitioners later argue that the statutory provisions of 8 U.S.C. § 1252 relied upon by the Court in its initial order and restated above simply do not apply in this case. They rely on various Supreme Court cases that are not directly on point and essentially support their position only to the extent that they agree that the statutory framework applies when an order of removal is challenged. And Petitioners continue to maintain that they do not challenge any order of removal. However, *Ojeda-Terrazas* shows that, according to the Fifth Circuit, they do challenge an order of

removal by challenging the reinstatement orders and that they have misplaced their reliance on that case to show jurisdiction. Petitioners cite no case to call into question *Ojeda-Terrazas* and its progeny. Thus, to the extent the Court were to accept Petitioners' position regarding § 1101(g), it would still lack jurisdiction over this action.

As a last grasp attempt at securing jurisdiction, Petitioners argue that this Court has jurisdiction over this case because another judge in the Western District of Texas "found" jurisdiction in a factually indistinguishable case. Petitioners surmise that the judge in that case "found" jurisdiction because it granted an ex parte temporary restraining order rather than initially dismissing the case for lack of jurisdiction. A court, however, does not have jurisdiction over an action merely because a ruling in a different case suggests that the other court proceeded as though it had jurisdiction.

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). When neither Congress nor the Constitution has bestowed jurisdiction over an action or when jurisdiction is limited to some other federal court, this Court lacks jurisdiction and must dismiss the case. A decision by a respected colleague that seemingly finds jurisdiction in a similar case is not binding precedent that supports finding jurisdiction in this case. Such decisions can be persuasive. But granting an ex parte temporary restraining order without benefit of argument from the respondents provides insufficient detail to be persuasive enough given the pre- and post-judgment analysis in this case. Notably, the other case was ultimately dismissed as moot, which is a different jurisdictional reason for dismissal.

For the foregoing reasons, the Court **DENIES** *Petitioners' Motion to Alter or Amend Judgment* (ECF No. 11). Petitioners have not clearly established either a manifest error of law or fact.

12

Even if their interpretation of 8 U.S.C. § 1101(g) is correct and they had executed the prior removal orders, this Court still lacks jurisdiction as set forth herein. The only difference would be the statutory provision that divests this Court of jurisdiction. Such a change does not constitute a manifest error and presents no basis to alter or amend the judgment.

**SIGNED this 14th day of December 2020.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**